UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KRISTEN PALTZ,<br>    *Plaintiff*,<br><br>v.<br><br>ALLIANCE HEALTHCARE SERVICES, INC., LISA CONSIGLIO, and RICHARD DEVANEY,<br>    *Defendants*. | No. 3:21-cv-0020 (VAB) |

**RULING AND ORDER ON MOTION TO COMPEL ARBITRATION, APPOINT AN ARBITRATOR, AND STAY ALL PROCEEDINGS**

Kristen Paltz (the "Plaintiff") has sued Alliance Healthcare Services, Inc., Lisa Consiglio, and Richard Devaney (together, the "Defendants") under the False Claims Act, 31 U.S.C. § 3730(h); the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*; the Equal Pay Act of 1963, 29 U.S.C. § 206 *et seq.*; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; the Connecticut Equal Pay Act, Conn. Gen. Stat § 31-75 *et seq.*; the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*; the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*; and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60. *See* Am. Compl., ECF No. 29 (Apr. 20, 2021) ("Am. Compl.").

On April 27, 2021, the Defendants moved for an order, under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, to compel arbitration on the above claims, to appoint an arbitrator, and to stay the proceedings. *See* Defs.' Mot. to Compel Arbitration of Pl.'s Claims, Appoint an Arbitrator, and Stay Proceedings Pending Ruling on Mot. and Completion of Arbitration, ECF No. 30 (Apr. 27, 2021) ("Mot. to Compel Arbitration").

For the reasons explained below, the Court **GRANTS** the motion to compel arbitration and to appoint an arbitrator. The Court, however, will provide the parties with another opportunity to agree on an arbitrator. By **April 8, 2022**, the parties shall file a joint response with the name of the proposed arbitrator, or if they cannot agree, each party shall submit three names for the Court's consideration.

This case will be stayed, and administratively closed (without judgment being entered) until the arbitration proceedings have concluded.

I.      FACTUAL AND PROCEDURAL BACKGROUND

Ms. Paltz worked at Alliance Healthcare Services, Inc. ("Alliance" or the "Company") from 1995 until 2020. Am. Compl. ¶¶ 2, 10–12; *see also* Ex. 1 to Defs.' Mot. to Compel Arbitration of Pl.'s Claims, Appoint an Arbitrator, and Stay Proceedings Pending Ruling on Mot. and Completion of Arbitration ¶ 16, ECF No. 30-2 (Apr. 27, 2021) ("MacPhail Decl."). On April 1, 2020, the Company allegedly terminated Ms. Paltz for impermissible reasons, including but not limited to disability discrimination and retaliation for whistleblowing, "under the pretext of including her in a reduction-in-force." Am. Compl. ¶¶ 10–12, 41–104.

On January 7, 2021, Ms. Paltz filed a Complaint against the Company to challenge the termination of her employment, alleging violations of the False Claims Act, 31 U.S.C. § 3730(h); the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.*; the Equal Pay Act of 1963, 29 U.S.C. § 206 *et seq.*; the Connecticut Equal Pay Act, Conn. Gen. Stat § 31-75 *et seq.*; the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*; and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq*. See Compl., ECF No. 1 (Jan. 7, 2021).

On April 1, 2021, Ms. Paltz filed a motion to amend her Complaint, *see* Mot. to Amend, ECF No. 23 (Apr. 1, 2021), which the Court granted, *see* Order, ECF No. 27 (Apr. 20, 2021).

On April 20, 2021, Ms. Paltz filed an Amended Complaint alleging additional violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*; and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60.

On April 27, 2021, the Defendants filed a motion to compel arbitration of Ms. Paltz's claims under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. *See* Mot. to Compel Arbitration. In support of their motion, the Defendants offered a written Dispute Resolution Policy (or "DRP"), contained within a Team Member Handbook ("Handbook"). *See* Ex. 1-B to Defs.' Mot. to Compel Arbitration of Pl.'s Claims, Appoint an Arbitrator, and Stay Proceedings Pending Ruling on Mot. and Completion of Arbitration, ECF No. 30-4 (Apr. 27, 2021) ("Handbook").

The Handbook includes an "Acknowledgement of Receipt, Agreement, Understanding and Willingness to Comply" (the "Acknowledgement"), which asks employees to acknowledge, *inter alia*, the following:

> [1.] I am expected to be familiar with the contents of the Handbook, including without limitation the Dispute Resolution Policy ("DRP") contained therein. [ . . . ]
>
> [2.] If any employment-related disputes exist or arise between me and any Alliance operating entities and/or their employees, any such Alliance operating entities and I are and will be bound by the provisions, terms, and conditions of the DRP, including its final and binding arbitration and class, representative, and PAGA action waivers. Pursuant to the DRP, both **the Alliance operating entities and I each waive our rights to have any "Covered Disputes" (as described therein) heard or decided through any type of judge or jury trials, class actions, class arbitrations, collective actions, collective arbitrations, "Representative Action" or "PAGA Action" (as described therein), or coordinated or consolidated arbitrations, actions, or proceedings, all of which are prohibited under the DRP**, and we agree that any Covered Disputes can only be resolved through mediation, an individual final and binding arbitration proceeding, or a Small Claims Court action, except as otherwise expressly set forth in the DRP. The DRP may not be

> modified except in writing, or as otherwise permitted or required by the DRP or controlling law.
>
> [3.] No signature by me or any representative of any Alliance operating entity is required for the DRP to be binding on us. I can elect to not be bound by the DRP or its Chosen State Law (as defined therein) provisions by following the procedures set forth in its "Employee Election To Not Be Bound By DRP Or Chosen State Law" section of the DRP for giving the Alliance operating entities written notice of my election within 30 days of my receipt or notice of availability of the Handbook (whichever occurs first). If I do not follow those procedures, the Alliance operating entities and I will be required to arbitrate any Covered Disputes in accordance with the DRP. The Alliance operating entities do not have a preference as to whether I elect to not be bound by the DRP or its Chosen State Law provisions, I am not in fear of retaliation or reprisals (which is strictly prohibited by the Alliance operating entities), I can consult with independent legal counsel (at my own expense) about whether I should make such an election, no representations about the DRP have been made to me by the Alliance operating entities other than as set forth herein and in the DRP, and I will not rely on any representations about the DRP by the Alliance operating entities other than as set forth herein and in the DRP.

Handbook at 48–50.

Ms. Paltz allegedly signed this Acknowledgement electronically. MacPhail Decl. ¶¶ 12, 17–20.

On May 25, 2021, Ms. Paltz filed a memorandum in opposition to the motion to compel arbitration. *See* Pl. Kristen Paltz's Mem. of Law in Opp'n to Defs.' Mot. to Compel Arbitration of Pl.'s Claims, Appoint an Arbitrator, and Stay Proceeding Pending Ruling on Mot. and Completion of Arbitration, ECF No. 34 (May 25, 2021) ("Opp'n").

In support of this motion, Ms. Paltz filed an affidavit stating that she "recall[s] signing something in January of 2020", but does not know what was in the document. Ex. 1 to Pl. Kristen Paltz's Mem. of Law in Opp'n to Defs.' Mot. to Compel Arbitration of Pl.'s Claims, Appoint an Arbitrator, and Stay Proceeding Pending Ruling on Mot. and Completion of

Arbitration ¶ 3, ECF No. 34-1 (May 25, 2021) ("Paltz Decl."). She also declares, in the same affidavit, that she did not read the Handbook in full or know there was an arbitration agreement in it. *Id.* ¶ 5.

On June 8, 2021, the Defendants filed a memorandum in further support of their motion to compel arbitration. *See* Defs.' Reply Mem. in Supp. of Their Mot. to Compel Arbitration of Pl.'s Claims and Stay Proceedings Pending Ruling on Mot. and Completion of Arbitration, ECF No. 37 (June 8, 2021) ("Reply").

## II.     STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). Section 2 of the FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 4 of the FAA enables any "party aggrieved" by the failure of another to arbitrate under a written agreement for arbitration to petition a United States District Court "for an order directing that such arbitration proceed in the manner provided for in such agreement." *Id.* § 4.

Courts follow a two-part test to determine whether claims are subject to arbitration, considering "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). "A court may not deny arbitration where there is a valid arbitration agreement that covers the asserted claims." *Davis v.*

*Macy's Retail Holdings, Inc.*, No. 3:17-CV-1807 (JBA), 2018 WL 4516668, at *2 (D. Conn. Sept. 19, 2018) (citation omitted).

In the context of a motion to compel arbitration brought under the FAA, courts apply "a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003); *see also McAllister v. Conn. Renaissance Inc.*, No. 3:10-CV-1488 (WWE), 2011 WL 1299830, at *3 (D. Conn. Apr. 5, 2011) (applying summary judgment standard in the context of a motion to compel arbitration). The party seeking to compel arbitration must "substantiat[e] [its] entitlement [to arbitration] by a showing of evidentiary facts" that support its claim that the other party agreed to arbitration. *Oppenheimer & Co., Inc. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995). "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Id.* (citation omitted). If the evidence suggests a genuine issue of material fact, the court must summarily proceed to trial. *Bensadoun*, 316 F.3d at 175 (citing 9 U.S.C. § 4).

The court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3; *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) ("The district court must stay proceedings once it is 'satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding.'" (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997))).

### III. DISCUSSION

#### A. Motion to Compel Arbitration

"When determining whether to compel arbitration pursuant to the FAA, a court looks to four factors: (1) whether the parties agreed to arbitrate their dispute; (2) whether the asserted claims fall within the scope of the arbitration agreement; (3) whether Congress intended the federal statutory claims asserted by the plaintiff, if any, to be non-arbitrable; and (4) if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then decide whether to stay the remaining claims pending arbitration." *Billie v. Coverall N. Am., Inc.*, 444 F. Supp. 3d 332, 343 (D. Conn. 2020) (citing *JLM Indus., Inc. v. Stolt–Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004)).

Only the first factor and the defense of unconscionability are at issue here. Each will be discussed below.

#### 1. Validity of Agreement to Arbitrate

"The threshold question facing any court considering a motion to compel arbitration" is "whether the parties have indeed agreed to arbitrate." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 118 (2d Cir. 2012). That question "is determined by state contract law principles." *Nicosia*, 834 F.3d at 229 (citing *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 27 (2d Cir. 2002)); *see also First Options of Chi. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." (citations omitted)); *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012) ("Whether or not the parties have agreed to arbitrate is a question of state contract law." (citation omitted)); *Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 295–96 (2d Cir. 1999) ("[W]hile § 2

7

of the FAA preempts state law that treats arbitration agreements differently from any other contracts, it also 'preserves general principles of state contract law as rules of decision on whether the parties have entered into an agreement to arbitrate.'" (quoting *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993))).

Under Connecticut law,[1] a contract is formed through an offer and an acceptance of that offer. *See Bridgeport Pipe Eng'g Co. v. DeMatteo Constr. Co.*, 159 Conn. 242, 246 (1970) ("It is elementary that to create a contract there must be an unequivocal acceptance of an offer." (citations omitted)); *Ubysz v. DiPietro*, 185 Conn. 47, 51 (1981) ("[I]n order to form a contract, generally there must be a bargain in which there is a manifestation of mutual assent to the exchange between two or more parties; . . . and the identities of the contracting parties must be reasonably certain." (internal citations omitted)).

Defendants have moved to compel arbitration on the grounds that the parties formed a valid agreement to arbitrate, to which they are bound, when Ms. Paltz received the Handbook that contained the DRP and electronically signed the Acknowledgement. Mot. to Compel Arbitration at 12 (citing Handbook at 47; MacPhail Decl. ¶¶ 19–20).

Ms. Paltz asserts that this agreement did not constitute a valid contract where no consideration was provided. Opp'n at 7–12. Ms. Paltz further argues that the contract is invalid because it contains "unlawful" and "non-severable" provisions, which invalidate the contract as a whole, *see id.* at 12–14—specifically, the Handbook's statement that the Dispute Resolution Policy "replace[s] the right to [ ] go to court or an administrative agency," *see* Handbook at 37; *see also* Opp'n at 12 (citing, *inter alia*, EEOC Notice No. 915.002 (April 10, 1997)). Ms. Paltz

---

[1] The parties do not dispute that Connecticut state law, along with the FAA, governs the applicability of the arbitration clause in this case. *See* Opp'n at 6–7; Reply at 2–3.

also challenges the validity of the contract as a whole, on the basis that it was merely an acknowledgement of "general workplace policies and practices", rather than a contract, of which, notably, Alliance did not provide her with a copy. Opp'n at 7–8.

The Court disagrees.

Under Connecticut law, a party who signs a written contract is conclusively presumed to know its contents and to assent to them, and he or she is therefore bound by its terms and conditions. *See Phoenix Leasing, Inc. v. Kosinski*, 47 Conn. App. 650, 654 (1998). In the employment context, courts in this District routinely uphold arbitration agreements in an employee handbook where the employee signs an acknowledgement form. *See Santos v. GE Cap.*, 397 F. Supp. 2d 350, 355–56 (D. Conn. 2005) (finding that employer and employee agreed to submit claims to arbitration where "[the employee] signed at the bottom of the acknowledgement form" of the employee handbook); *Gambardella v. Pentec, Inc.*, 218 F. Supp. 2d 237, 243–44 (D. Conn. 2002) (finding arbitration agreement enforceable "even if misrepresentations about the necessity of signing the acknowledgment form were made" where employee signed acknowledgement form in manual).[2] Here, Defendants have provided evidence that Ms. Paltz electronically signed the Acknowledgement to the Handbook, *see* MacPhail Decl. ¶¶ 12, 17–20, and Ms. Paltz has not marshaled any evidence to suggest that this signature is invalid or that she otherwise opted out of the agreement to arbitrate.[3] The Court therefore finds that the parties formed a valid arbitration agreement.

---

[2] Similar authority exists to support this conclusion from the Southern District of New York. *See Chanchani v. Salomon/Smith Barney, Inc.*, No. 99-CV-9219 (RCC), 2001 WL 204214, *3 (S.D.N.Y. Mar. 1, 2001) ("Courts in this district routinely uphold arbitration agreements contained in employee handbooks where . . . the employee has signed an acknowledgment form." (citation omitted)); *see also Patterson v. Raymours Furniture Co.*, 96 F. Supp. 3d 71, 76 (S.D.N.Y. 2015) (collecting cases), *aff'd*, 659 F. App'x 40 (2d Cir. 2016) (summary order).

[3] Even if Ms. Paltz does not remember that she signed the agreement or did not read it, *see* Paltz Decl. ¶¶ 3, 5, such allegations are insufficient to create a genuine issue of material fact as to whether the parties agreed to arbitrate under Connecticut Law, *see Ferrie v. DirecTV, LLC*, No. 3:15-CV-409 (JCH), 2016 WL 183474, at *5 (D. Conn.

As to Ms. Paltz's first argument, that any arbitration agreement is invalid due to lack of consideration, as with other contracts, "mutual promises" in arbitration agreements are "sufficient to support consideration." *Deleon v. Dollar Tree Stores, Inc.*, No. 3:16-CV-00767 (CSH), 2017 WL 396535, at *3 (D. Conn. Jan. 30, 2017) (citations omitted); *see also Topf v. Warnaco, Inc.*, 942 F. Supp. 762, 767 n.2 (D. Conn. 1996) (explaining that "[m]utual promises to arbitrate are sufficient to support an arbitration agreement" (citing *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402, 411 (2d Cir. 1959)); *Manzin v. United Bank & Trust Co.*, 6 Conn. App. 513, 516 (1986) ("[M]utual promises qualify as sufficient consideration for a binding contract." (citing, *inter alia*, *Gordon v. Indusco Mgmt. Corp.*, 164 Conn. 262, 267–68 (1973))). Here, the arbitration agreement confers an obligation on both Alliance and Ms. Paltz to litigate any disputes in arbitration. *See* Handbook at 49 ("[T]he Alliance operating entities and I [the employee] each waive our rights to have any "Covered Disputes" . . . heard or decided through any type of judge or jury trials . . . ."). As a result, Alliance's promise to litigate any disputes it has against Ms. Paltz in arbitration constitutes sufficient consideration for Ms. Paltz's agreement to do the same.

As to Ms. Paltz's second argument—that the arbitration agreement is invalid due to a provision that replaces her right to go to an administrative agency with her claims, which Ms. Paltz argues is unlawful under EEOC Notice No. 915.002—the Dispute Resolution Policy expressly states that employees "retain the right . . . to file unfair labor practices charges with the National Labor Relations Board . . . , and to file charges and complaints with the [EEOC], the

---

Jan. 12, 2016) (plaintiff did not create a material dispute of fact merely because he did not "recall" receiving documents containing arbitration agreement); *see also Vardanyan v. Close-Up Int'l, Inc.*, 315 F. App'x 315, 317–18 (2d Cir. 2009) (summary order) (finding lack of genuine dispute of fact under New York law where party's "statement that he does not remember whether he signed the document does not conflict with the testimony and evidence that defendants have submitted about the terms of that agreement" (internal quotation marks omitted)).

10

United States Department of Labor, and other federal, State, and local government agencies and officials for investigation under applicable laws within their jurisdiction, including but not limited to . . . unlawful employment practices." *Id.* at 44. The Dispute Resolution Policy also states that "all" employees "retain the right to . . . report any good faith allegation of unlawful employment practices to any appropriate federal, State, or local government agency enforcing discrimination laws . . . ." *Id.* Regardless of whether EEOC Notice No. 915.002 controls under these circumstances, the express carve-outs in the arbitration agreement provide Ms. Paltz with an avenue to go to an administrative agency with her claims.

Accordingly, the Court finds that a valid arbitration agreement exists.

### 2. Unconscionability

The Court next addresses whether, even if a valid arbitration agreement has been formed, it is unenforceable under the defense of unconscionability.

"The classic definition of an unconscionable contract is one which no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other." *Smith v. Mitsubishi Motors Credit of Am., Inc.*, 247 Conn. 342, 349 (1998) (internal quotation marks and citation omitted).

"The question of unconscionability is a matter of law to be decided by the court based on all the facts and circumstances of the case." *Cheshire Mortg. Serv., Inc. v. Montes*, 223 Conn. 80, 87 (1992) (citations omitted). "Unconscionability has both procedural and substantive components, requiring a demonstration of 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'"[4]

---

[4] "Connecticut courts have not clearly decided whether a contract must be both procedurally and substantively unconscionable." *Tarpon Bay Partners, LLC v. Zerez Holdings Corp.*, No. 3:17-CV-579 (SRU), 2019 WL 4646061, at *9 (D. Conn. Sept. 24, 2019); *see also Billie*, 444 F. Supp. 3d at 348–49 (collecting cases).

*Williamson v. Pub. Stores, Inc.*, No. 3:03-CV-1242 (RNC), 2004 WL 491058, at *2 (D. Conn. Mar. 1, 2004) (quoting *Emlee Equip. Leasing Corp. v. Waterbury Transmission, Inc.*, 31 Conn. App. 455, 463–64 (1993)).

"Substantive unconscionability focuses on the 'content of the contract,' as distinguished from procedural unconscionability, which focuses on the 'process by which the allegedly offensive terms found their way into the agreement.'" *Billie*, 444 F. Supp. 3d at 346–47 (quoting *Cheshire Mortg. Serv., Inc.*, 223 Conn. at 87 n.14); *see also Smith*, 247 Conn. at 349 ("In practice, we have come to divide this definition into two aspects of unconscionability, one procedural and the other substantive, the first intended to prevent unfair surprise and the other intended to prevent oppression.").

Ms. Paltz argues that the arbitration agreement is both procedurally and substantively unconscionable. The arbitration agreement is procedurally unconscionable, according to Ms. Paltz, where it is "very complicated for a lay person" and "presented in a dense, confusing manner that could mislead even a legal practitioner . . . ." Opp'n at 16. Ms. Paltz further argues, relying upon precedent outside this Circuit, *id.* at 18–19 (citing, *inter alia*, *Shankle v. B-G Maint. Mgmt. of Colorado, Inc.*, 163 F.3d 1230 (10th Cir. 1999); *Giordano v. Pep Boys-Manny, Moe & Jack, Inc.*, No. CIV. A. 99-1281, 2001 WL 484360 (E.D. Pa. Mar. 29, 2001)), that the cost-splitting provision in the arbitration agreement is substantively unconscionable, where it requires equal apportionment of arbitration costs between the employee and the company, *id.* at 19.

In response, Defendants argue that Ms. Paltz cannot claim that the Dispute Resolution Policy was unconscionably "dense" and "confusing" as a procedural matter where, in an affidavit, she declared that she had failed to read the Handbook "in full." Reply at 6 (citing Paltz Decl. ¶ 5). The Defendants also argue that the arbitration agreement was not procedurally

unconscionable where it was not a "take-it-or-leave it" offer and the Acknowledgement "specifically directed Plaintiff's attention" to the Dispute Resolution Policy in the Handbook, to which Ms. Paltz had access. *Id.* at 6–7. Further, the Defendants argue that this Court cannot find the arbitration agreement substantively unconscionable where the "record is incomplete as to the fees likely to be incurred by Plaintiff or her financial situation." *Id.* at 8 (emphasis omitted).

The Court agrees.

As a preliminary matter, the arbitration agreement is not procedurally unconscionable. Although included in a longer handbook, the introduction to the Dispute Resolution Policy is highlighted in all capital letters and accompanied by bold and underlined text. *See* Handbook at 37. The Acknowledgement also reiterates the key provisions of the Dispute Resolution Policy, including the waiver of right to a trial, in bold and underlined text. *Id.* at 49. Within the Handbook, the Dispute Resolution Policy and Acknowledgement are not in a smaller font size than the surrounding text.[5] *Id.* at 37. "The law requires nothing more." *Billie*, 444 F. Supp. 3d at 347 (citing, *inter alia*, *Dr.'s Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)); *see also Van Voorhies v. Land/Home Fin. Servs.*, No. CV-095031713S, 2010 WL 3961297, at *5 (Conn. Super. Sept. 3, 2010) (unpublished opinion) (finding that an arbitration clause in a forty-five (45) page hire package was not "hidden" and concluding that "any procedural unconscionability inherent in the arbitration agreement is minimal"). Any alleged element of "unfair surprise" is further belied by the explicit text in the Acknowledgement directing Ms. Paltz's attention to the Dispute Resolution Policy. *See Daimlerchrysler Ins. Co., LLC v. Pambianchi*, 762 F. Supp. 2d

---

[5] In regard to the font size of the Dispute Resolution Policy, the Court notes that Defendants have not provided a full copy of the Handbook for the Court's review, but, rather, excerpts of only the Dispute Resolution Policy and Acknowledgement; the Court, however, is able to review the size and font of the language of the Dispute Resolution Policy in comparison to the language in the section of the Handbook preceding the Dispute Resolution Policy at page 37. *See* Handbook at 37.

410, 423 (D. Conn. 2011) ("[T]he principle of unconscionability does not supersede the duty of a contracting party to read and attempt to understand the terms of a written agreement before signing it." (citation omitted)), *aff'd*, 469 F. App'x 65 (2d Cir. 2012) (summary order).

Ms. Paltz also has not met her burden of demonstrating that the contract is substantively unconscionable. Under Connecticut law, it is Ms. Paltz's burden to make this showing. *See D'Antuono v. Serv. Rd. Corp.*, 789 F. Supp. 2d 308, 327 (D. Conn. 2011) ("Under Connecticut law, the party that raises unconscionability as a defense to the enforcement of any contract typically has the burden of showing that the contract is both procedurally and substantively unconscionable." (citing *Bender v. Bender*, 292 Conn. 696, 702 (2009)); *see also Billie*, 444 F. Supp. 3d at 350 ("[W]here, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." (quotation marks omitted) (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000)). Ms. Paltz has failed to do so here, where she has failed to raise her claims of financial hardship above the "speculative" level. *Billie*, 444 F. Supp. 3d at 351.

In her affidavit, in support of her claim that the costs of arbitration are "prohibitive", *see* Opp'n at 18, Ms. Paltz states that she is "currently unemployed" and a "cancer patient", who previously earned a salary of approximately $59,000 when employed by Alliance, Paltz Decl. ¶ 6. But even if Ms. Paltz does lack the necessary funds, the Dispute Resolution Policy states that the arbitrator may order a non-equal apportionment of costs upon "admissible, competent evidence" of Ms. Paltz's inability to pay the fees otherwise due under the equal apportionment clause of the policy. *See* Handbook at 43. The Court therefore cannot find that the cost-sharing provision renders the arbitration agreement substantively unconscionable. *See Billie*, 444 F.

Supp. 3d at 353 ("Based on the record before the court, including the information (or lack thereof) regarding the size of the plaintiffs' claim against CNA, the fees plausibly expected, and the plaintiffs' financial situation, . . . the plaintiffs have failed to demonstrate that the cost-sharing provision is substantively unconscionable under Connecticut law."). The Court therefore finds that a valid arbitration agreement has been formed and will impose a stay in the case until the conclusion of the arbitration proceeding. *See Nicosia*, 834 F.3d at 229 ("The district court must stay proceedings once it is 'satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding.'" (quoting *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997))).

Accordingly, the Court will grant the motion to compel arbitration and grant the motion for a stay.

### B. Motion to Appoint Arbitrator

The FAA provides that, where an arbitration agreement provides "a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed." 9 U.S.C. § 5; *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) ("[The FAA] requires courts 'rigorously' to 'enforce arbitration agreements according to their terms . . . .'" (internal citation omitted)). The Court, accordingly, looks to the arbitration agreement to determine whether to appoint an arbitrator in this case.

The Dispute Resolution Policy provides the following:

> Each Covered Individual and Company must mutually agree on the selection and appointment of a separate neutral arbitrator who is experienced in the laws at issue to resolve their respective individual Covered Disputes at issue. If no such agreement can be reached, each Covered Individual and Company must mutually agree on a dispute resolution services provider ("DRS Provider") to administer the arbitration, whose procedures for appointing an arbitrator will be followed. . . . If mutual agreement on the selection and

>appointment of an arbitrator or a DRS Provider as set forth herein is not reached, appointment of an arbitrator and/or DRS Provider meeting the terms and requirements of this DRP may be sought in a court of competent jurisdiction pursuant to applicable law.

Handbook at 39–40.

Here, the parties agree that they are unable to come to a mutual agreement as to an arbitrator or DRS Provider,. *See* Mot. to Compel Arbitration at 15; Opp'n at 20. As a result, under the terms of the agreement, a "court of competent jurisdiction" must appoint the arbitrator and/or DRS Provider. *See* Handbook at 40. This Court has jurisdiction to appoint an arbitrator in this case. *See* 9 U.S.C. § 206; *see also Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 92 n.5 (2d Cir. 2005) ("[A] district court does have authority to appoint arbitrators after granting a motion to compel arbitration under 9 U.S.C. § 206.").

Accordingly, the motion to appoint an arbitrator will be granted.

IV. **CONCLUSION**

For the foregoing reasons, the motion to compel arbitration and appoint an arbitrator is **GRANTED**.

The Court, however, will provide the parties with another opportunity to agree on an arbitrator. By **April 8, 2022**, the parties shall file a joint response with the name of the proposed arbitrator, or if they cannot agree, each party shall submit three names for the Court's consideration.

This case will be stayed, and administratively closed (without judgment being entered) until the arbitration proceedings have concluded.

This case may be reopened by motion of any party at any time, but no later than sixty (60) days after any final arbitration award/decision.

**SO ORDERED** at Bridgeport, Connecticut, this 4th day of March, 2022.

      /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge